We call the next case Citizens for Pennsylvania Future v. Pittsburgh Water and Sewer Authority and the City of Pittsburgh. Mr. Weist? Very well, Your Honor. Kurt Weist, representing the appellant Penn Future. I would like to reserve three minutes for rebuttal. That request will be granted. The appellee seek affirmance of the summary judgment that was entered below in this case, not on the single ground decided by the District Court, but instead on either of two alternate grounds. So the first question presented is whether this Court should exercise its discretion to decide in the first instance one complex issue of first impression that the District Court should consider. The appellees themselves declined to advance as a basis for summary judgment. Now, it is true that when this Court reviews a grant of summary judgment, the review is plenary and this Court applies the same standard as the District Court. But the key word in for affirmance only if there is something to review. That is, only if the issue was raised, the arguments of the parties were analyzed, and the District Court actually decided the issue. That is not the situation presented here. The District Court accurately observed on page 7 of the appendix that the question of whether the 11th Street project meets the technical stormwater management standards of the City Code, quote, was not brought as grounds for summary judgment. Clearly this Court should not reach in the first instance an issue that wasn't even advanced as a basis for summary judgment below. The second alternate ground, and the principal one relied on by the appellees, is the question of the applicability of the City's 2010 ordinance under the National Pollutant Discharge Elimination System permit that is held by the City of Pittsburgh and the Pittsburgh Water and Sewer Authority. That issue clearly was raised. It was raised in the initial motion for summary judgment, in the renewed motion for summary judgment, and in Penn Future's motion for reconsideration. In fact, the District Court ordered a second round of briefing on that very issue of the applicability of the 2010 ordinance. But then it didn't analyze the arguments presented by the parties, it didn't decide that issue, and on its own motion, without notice to the parties, decided the case on a ground not presented by any party. That prompted Penn Future to file a motion for reconsideration. And we said to the District Court, you decided the wrong issue, you decided it incorrectly, and you should correct those two errors and decide the issue presented by the motion for summary judgment, the issue of the applicability of the 2010 ordinance. That motion was summarily denied the next day. The appellees are now asking you, this Court, to decide in the first instance the issue that we asked the District Court to decide. You acknowledge, though, that we have discretion to do that? You have discretion to do that. And the exercise of discretion should be informed by the circumstances. Here, in our motion for reconsideration, we asked the District Court to decide that issue. The appellees are now asking you to decide it. And the appellees are not advancing any defense of the rationale of the District Court. In other words, if you put those two things together, Penn Future's motion for reconsideration was on the mark. If we were to send it back, what can we do to make sure that the fourth time is the charm? If we were to send it back, the purpose would be so that when the case came back to us, we would actually have a full-blown record that is joined and litigated for the benefit of our review, right? That's what you're looking for. Exactly. I would say for the benefit of your review. So it is a benefit to this Court, obviously. This Court is a reviewing Court. That's your function. And I understand I'm speaking to former District Court judges here. But the function of the District Court is not simply to assemble a record. The function is to decide the case in the first instance. And your function is to review those decisions. I think there's also a benefit of that. But what can we do, though? Do you have any advice for us, if we were to send it back, to make sure that the appropriate record is created? Because Magistrate Judge Mitchell, he had this on consent, right?  It appeared from my reading that he sort of threw up his hands and said, well, the lawyers aren't being very helpful to me here. What am I to do? Is that just because of the dearth of case law in this area? There is a dearth of case law. But he didn't say that. He said that the first time. So the initial motion, he quote, temporarily denied the initial motion, directed that the renewed motion be filed and set a briefing schedule. But didn't say that in response to the briefing on the second, on the renewed motion. He simply stated a different issue and decided a different issue. And you say you were helpful in answering the question when he asked it to be answered specifically? I believe both sides were as helpful as we could be. The thing that we couldn't provide, that we haven't provided to this Court, that we can't provide today, because of the rather unique set of circumstances that's presented here, is a case that is on all fours. So we're the ones who have to create a case on all fours. But are we in a position to answer the question that Judge Mitchell would not answer? Or did not answer? You are in the position in the sense that it is merely a question of the law. Or do we have to send it back? I think it's appropriate to send it back in this circumstance. Why? What else are we going to get by sending it back? How is the record going to be enhanced by sending it back? Well, you're going to have a decision. It's the winnowing process of a judicial decision. All right, we'll get Judge Mitchell to give us an answer. 2010 ordinance applies. 2010 ordinance doesn't apply. And it may affect any number of things in the litigation. It may affect the party's position with respect to settlement. I understand that. It may also affect whether or not that issue gets presented to this Court. Because if they lose on the issue of the applicability, there are still additional issues to be decided in the District Court. But fundamentally, I think the most important circumstance or circumstances are that it is a complex issue, a complex issue of first impression, and it is in a situation where the District Court overlooks something or a situation in which the District Court decided two issues, one in our favor and one adversely, but we overall lost, where you would have a decision to review on both issues. In this case, the District Court simply did performance function and you're not supposed to be making decisions in the first instance. And I was struggling to try to figure out why the District Court decided the case the way it decided it. And one view that I sort of came up with in my own mind was that the District Court's decision essentially said that as I read Clean Streams Law and as I read the Clean Water Act, violations of any ordinances which are adopted are not violations of the permit. Isn't that in essence what the District Court said? I think it is in essence what the District Court said and we hadn't been asked to brief that issue and if we had, we would have briefed it in the way we did in the motion for reconsideration and in our opening brief, which hasn't been answered. Okay, but in reality you were asked to brief a subsidiary issue of whether or not a violation of the 2010 ordinance was a violation of the permit, correct? That's correct, but the basis is different. I think the District Court judge's rationale would apply with full force to the 2007 ordinance in this case. It would also apply with full force to enforcement by PA, Department of Environmental Protection, or the US EPA. What he was saying is that the failure to enforce any municipal ordinance, and what's wrong about that obviously is that there's a duty to comply with provision in the permit and that the usual notion of enforcement discretion is limited by the fact that these municipalities aren't simply municipalities, they're permittees. The permit and the duty to enforce provision changes the analysis. Just on the 2010 ordinance, does the 2010 ordinance go beyond the Clean Water Act or the Clean Streams Law in what it adds to the city ordinances? I don't believe it goes beyond, I believe it's consistent with, and I believe it's specifically consistent with the minimum control measure regulations of the US EPA. So 40 CFR, section 122.34B, and I can give you an example with B-5. Known as minimum control measure 5, it's 122.34B-5, and it is on pages 20 and 21 of the addendum to the opening brief. And the topic, it deals with So something at the heart of both the 2007 and 2010 ordinances. On page 20 of the addendum, it says it establishes the general requirement. The municipality must, subparagraph B, use an ordinance or other regulatory mechanism to address post-construction runoff from new development and redevelopment projects to the extent allowable under state, tribal, or local law. So very general, not prescriptive, doesn't have the kinds of details that you see in the city ordinance provisions that are in the appendix. Here's the important part. That subsection of the regulations on page 21 ends stormwater technologies are constantly being improved and EPA recommends that your requirements be responsive to these changes, developments, or improvements in control technologies. So I think the 2007 ordinance and, in particular, the 2010 ordinance fits squarely within that description of Minimum Control Measure 5 or, I'm sorry, the provisions of Minimum Control Measure 5. Overall, the 2010 amendments used an ordinance to address post-construction stormwater runoff in a manner allowable by state and local law and it adjusted the requirements of the stormwater management program in response to developments in stormwater control techniques. That's squarely within Minimum Control Measure 5. Okay. All right, Mr. Wiest, we will have you back on rebuttal. At this time, we'll hear from Mr. Mr. Rice. Reese, Your Honor. Reese. I started looking at it. They didn't look similar, but when I started articulating them, it sounded like the same name, Wiest and Rice. Reese. Reese. Reese and Wiest. Mr. Reese. Thank you, Your Honor. Like Reese's Candies, right? We have a case tomorrow. Spell a little bit different. We have a case tomorrow on chocolate. We can keep it straight that way. Your Honors, I represent the Pittsburgh Water and Sewer Authority, which was a defendant below and is an appellee in this case. The City of Pittsburgh is a co-defendant and the Buncher Company was a third-party defendant. They have both agreed since they adopted the PWSA's brief that I will present the argument and they're not asking for any argument time. So let me start with the issue of discretion of this court to affirm on a ground different from the ground that the trial court granted. It's our view that this court should decide at this point as a matter of judicial economy and also as a matter of fairness to the defendants, that is, PWSA and the City and to the Buncher Company. As the complaint noted, the construction of this project started before the complaint was filed in the middle of 2012. We're now going on three years from the time that it was started and the parties need an answer. But supporting that also... Has construction ceased? The construction of the one part was stopped or was completed. I'm sorry, Your Honor. So the road that was a particular issue is done. There has not been construction on any other part of it but I don't believe that this lawsuit is what's holding it back. There's some other issues. Your scope review is plenary. We're dealing with a question of law, interpretation of a permit and interpretation of regulations. So it's not something that needs an appropriate record to be created in the district court. That was already done during discovery. That's a good argument but don't we need more than two lines of legal analysis? I mean that's basically what we have. What makes me a little uncomfortable is it feels like, and I'll give you an opportunity to disabuse me of this, but it feels like I'm being asked to put my trial judge hat on and make this decision in the first instance rather than review a detailed ample analysis from the able trial judge. That is a way of looking at it, Your Honor but it's also summary judgment and it's a very short record and it's primarily a matter of law. What do the regulations require and what does this permit require? But the appellees say there are things we would have argued if we had known that the district court was going to decide more than just the question presented to it of the applicability. Like the duty to comply. Other issues like that that the appellants say if we thought  but the violation was going to be decided we would have argued the duty to comply and we haven't had a chance to do that and it's not fair to prevent us from doing so. That's a valid point, Your Honor, if this court would affirm and just take the opinion and say affirmed from the district court. But this court does have the power to affirm an alternative ground and what we asked in our brief is that the court affirm on the basis that the 2010 ordinance is not an enforceable permit condition. That was fully briefed in the district court twice but not addressed. But it was not addressed. And it wasn't briefed on this appeal? It was briefed on this appeal, Your Honor. Not fully by the appellant as they would have argued to the district court in the first place on whether there was a violation or whether there could be a citizen suit action to enforce. That's correct. It was fully briefed by them twice in the district court and they addressed it again in their reply brief, but you're correct, Your Honor it was not in their brief for appellant in this court. But if it's going to go back to the district court we would need some direction from this court for the court to actually decide it. Well, we tell them to decide this question. That's not something that's unheard of. It is not unheard of, Your Honor. Our view is that it's a pretty straightforward question that is a matter of law and there was not authority and what I think the district court was looking for was some authority that said this is how you determine whether or not a particular subsequent action by a permittee becomes part of the permit. We realize sometimes we have to be the case that is the original cited case and I think that needs to be done in the district court in order to permit this case to go on and delay is always regrettable, but it's better to do it right than it is to do it wrong. That is understandable, Your Honor. What was your response to the motion for reconsideration? We didn't get an opportunity to respond. The court denied it very promptly. There was no response filed. If we had an opportunity to respond we would have again reiterated that the 2010 ordinance is not an enforceable part of the permit or second if it is a part of the permit the way it operates and Penfuger's counsel was explaining in the regulations they require minimum control measures that's what's in the federal regulations at the end of their brief and one of those minimum control measures is dealing with post construction runoff when there's development or redevelopment and that's what's involved here so the Pennsylvania Department of Environmental Protection says there's two ways you can do that we have a model protocol that has an ordinance in it and if you adopt what we have there that's it, you're good to go if not the Department of Environmental Protection has to approve any so what Pittsburgh did and this was a city PFSA doesn't enact ordinances but they are a co-permittee what the city did was in its application said we're going to just use the protocol because then we just adopt what DEP says we should they got to the point of getting ready to adopt that ordinance and then saw it seems to be drafted for central Pennsylvania where there's a lot of open land not for an urban area so we're going to have to tweak it so they met with DEP and they went through a number of rounds and got an ordinance that DEP would approve so DEP approved it that was the two ordinances that were adopted in 2007 and PennFuture in the pleadings and in their brief acknowledged that that ordinance exceeded the Pennsylvania requirements so you're already one step above the minimum control measures in 2010 the city of Pittsburgh adopted a new ordinance for publicly funded projects that was even more stringent than the original one so you have the minimum control measures something more stringent and then something even more stringent than that there's no evidence that DEP approved the 2010 ordinance there's no evidence that DEP was even aware of the 2010 ordinance so we think it's a straightforward position the permit says at least five times that an ordinance now they argue, I believe it's argued that the 2010 ordinance incorporates the 2007 ordinance if they're arguing that, that's absolutely incorrect we've heard a little bit of that today we've got the duty to comply you feel strongly that you're correct, but your opponent also feels that there is very relevant language in the permits in the overall program that need to be considered in determining whether if the 2010 ordinance is applicable or not whether there's a violation that part of their analysis is contrary to the express language of the permit that says that DEP has to approve and they have an argument to the contrary they aren't saying you're right on that are they? I don't believe they are saying we're right, but that's what the language of the permit says and the case authority that we cited the one area where there is some clear authority and even some language in a US Supreme Court case decision that we decided the permit is interpreted like a contract, it's not a contract but it's interpreted like a contract and if there is unambiguous language in the permit that unambiguous language governs so any argument about what the regulations suggest or things like that is contrary to the express language that's in the permit at least five times that says if you're going to adopt something different from our model you have to have approval from DEP so it's looking just at the four corners of the permit and the express language in it and the evidence in the record that DEP there's no evidence that DEP approved that 2010 ordinance so that's the issue that in our view resolves or will resolve this whole case is if the 2010 ordinance was not approved by DEP and the permit requires it to be approved by DEP then that's the end of it it doesn't require we need the regulations or anything outside of the face of the permit yeah and the only response that Penn Future made to that was number one if you adopt an ordinance then you have to look at any later amendments in the whole body it was implicitly adopted and that was the second one so the first one this added the 2007 ordinance became part of the city of Pittsburgh building code the 2010 ordinance added a new section to the building code that was self contained with these new requirements except for changing definitions and things to fit it so this wasn't amending the 2007 ordinance this added a whole new section to the code the second is the implicit approval and one of the witnesses who was an employee of the city of Pittsburgh said that they had assumed that the Philadelphia ordinance was implicitly approved by DEP because DEP never said anything to the contrary but Penn Future provided no legal authority that where a permit expressly requires DEP approval that there can be some kind of implicit approval and in today's regulatory climate and in today's budget climate I don't think you can really make a meaningful argument that the failure of an agency to approve or disapprove something is tantamount to implicit approval they had a full opportunity during discovery to ask DEP did you approve this have you accepted this and they didn't do it they had the full opportunity and there's just no evidence that DEP approved it and it's an express requirement of the permit so whether this court decides or it goes back to the district court the question is under proper interpretation of the permit looking at its four corners and the unambiguous language in it is the 2010 permit part of the permit or is it not part of the permit that's the really simple question that needs to be resolved ok alright Mr. Reese we thank you very much for your arguments and Mr. Wiest on rebuttal the 2010 ordinance clearly did amend the 2007 ordinance and specific provisions of it the title is Ordinance Amending Sections 1003.01 and 1003.04 of Chapter 1003 Title 10 of the Code of Ordinances of the City of Pittsburgh of the existing stormwater management requirements to provide more protective stormwater volume reduction standards and low impact development LID strategies for planning and construction of publicly funded development and publicly funded redevelopment projects it specifically added to section 4 section 4 was adopted in 2000 section 1003.04 was adopted in 2007 the 2010 ordinance and it applied to all regulated activities above a certain size the 2010 ordinance added an exception clause to section 4 saying that instead of applying to all regulated activities it applies to all regulated activities except publicly funded development and redevelopment projects which are subject to the new section 4a so it wasn't as if this was a stand alone enactment it amended and created an exception to one of the existing provisions if those additional provisions were not required under the Clean Streams Law or the Clean Water Act were they then part of the permit? Yes because as there were a lot of things in the 2007 ordinance the kinds of details that we're talking about here the various stormwater management methods that are on basically pages 115 through 121 of the appendix are not dictated by the regulations the regulations establish broader kinds of requirements and the municipalities fill in the details so it's essentially when you choose to do something that's part of your program all of the parties agree we get here by different ways but all of the parties agree that the 2007 ordinance was accepted by DEP as part of the stormwater management program under the permit the 2010 ordinance only made changes to that that were more restrictive, that were more protective so the 2007 ordinance was acceptable it follows that the 2010 ordinance and the changes it made to the program likewise were acceptable that's a reasonable inference we're the non-moving party we're entitled to that reasonable inference from this court thank you, your honor Mr. Weiss, thank you very much to both counsel we appreciate your excellent arguments and we'll take them out of under review